## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**UNITED STATES OF AMERICA**                                           **PLAINTIFF**

### No.  4:12CR000237-001 KGB

**JOEY HOYT**                                                          **DEFENDANT**

### OPINION AND ORDER

Before the Court is defendant Joey Hoyt's Motion to Suppress Evidence and Brief in Support (Dkt. No. 12).  The Court conducted a hearing on the motion July 26, 2013.  The government presented evidence, calling U.S. Postal Inspector Richard Kaufman to testify and admitting into evidence two exhibits.  No other witnesses were called to testify, and no other exhibits were admitted into evidence.  The Court heard argument from counsel for Mr. Hoyt and the government.  For the following reasons, the Court denies the motion.

**I.      Factual Background**

On October 27, 2011, U.S. Postal Inspector Richard Kaufman intercepted two packages being sent from a Johnny Thomas to Mr. Hoyt.  Inspector Kaufman has six years of experience with the U.S. Postal Inspection Service.  Prior to that, he worked for nine years as a letter carrier, supervisor, and operations support specialist inside the U.S. Post Office itself.  Currently, he works in an office with more experienced inspectors.  He has been trained on his duties as a U.S. Postal Inspector.  He testified about his training and experience in profiling packages to assess whether the packages may contain narcotics or proceeds from narcotics going through the mail system.  He does not assess packages daily to determine whether they fit a profile; instead, he testified that he assesses packages a couple of times per month to determine whether they fit a profile.  He has been involved in seeking 30 to 40 search warrants for packages, and of those, he

testified that only one or two of the packages for which he has obtained warrants did not contain narcotics proceeds, suspected narcotics proceeds, or suspected narcotics.  Most of the packages for which he has obtained warrants have been Express Mail packages; some may have been sent first class or through another method of mailing.

Inspector Kaufman explained that Express Mail is frequently used to transport narcotics or proceeds from narcotics.  Express Mail is usually delivered within one or two days of being deposited into the mail, which according to Inspector Kaufman means the package is at U.S. Postal facilities for a short time and only available for a short time for U.S. Postal Inspectors to observe and determine whether to seize or deliver timely.  Express Mail requires the individual recipient to sign for the package and is a trackable system.  He testified that approximately five percent of Express Mail packages are used for delivering personal items; whereas, approximately 95 percent of the packages sent through Express Mail are business deliveries.  Express Mail is more costly than sending packages through regular mail.  He explained that handwritten labels, paying cash for the postage, and listing a return address with a zip code different from the zip code from which the package was mailed are among the indicators he uses to profile packages, based on his training and experience.  When asked, he explained that, on occasion, suspicious packages are brought to his attention by the local post master or postal carrier, based on certain factors they observe.

Here, Inspector Kaufman considered the October 27, 2011, packages "suspect" because there were two Express Mail packages sent by the same sender, with the same return address, mailed from the same post office, with a mailing zip code different from the zip code listed as

the return address, to be delivered to the same recipient.  The mailing labels were handwritten.  There was no business account noted.

Perry, Arkansas, is a small town, according to Inspector Kaufman.  Over the two months prior to the October 27, 2011, packages being seized, parcels of similar weight had been sent via Express Mail from various Las Vegas, Nevada, addresses to Mr. Hoyt in Perry, Arkansas.  Although the parties' briefing indicates there may have been as many as seven prior packages, Inspector Kaufman testified on cross examination that one package was sent September 13, 2011, from Rob Lowe to Mr. Hoyt, one package was sent September 24, 2011, from Johnny Thomas to Mr. Hoyt, and three packages were sent on October 22, 2011, from Carol Murphy to Mr. Hoyt.  One sender's name – Rob Lowe – is the name of a famous person.  Some had the same return address as the October 27, 2011, packages, and others had different addresses listed.  The names of the senders were not associated with the return addresses provided, based upon Inspector Kaufman's search of the law enforcement database.  These packages were similar in weight and size to the October 27, 2011, packages seized.  These packages had similar shipping cost and were shipped with similar methods of payment. There were no business accounts noted on the packages.  The labels were handwritten with similar handwriting on those labels.  Inspector Kaufman testified it was unusual for five or six or seven Express Mail deliveries to be sent to a person's home in a two-month period.

With that, Inspector Kaufman seized the October 27, 2011, packages and searched a law enforcement database which provides information to confirm an address, to confirm names associated with an address, and to provide dates certain names are associated with an address.  He confirmed that the delivery address existed and that Mr. Hoyt's name was associated with the

address.  Inspector Kaufman also confirmed that the return address existed.  Mr. Thomas's name, however, was not associated with that return address.  Inspector Kaufman believed a fictitious name was being used as the sender's name.  Based on these facts, Inspector Kaufman subjected the package further to investigation.

He requested that a canine officer conduct a sniff of the packages and control packages. Inspector Kaufman laid out one of the October 27, 2011, packages and several control packages in a random order.  The canine officer did not know which package was seized and which packages were the control packages.  Then, he asked the canine officer and the trained dog to inspect the packages.  The dog had been trained to alert on marijuana, cocaine, heroin, and methamphetamine, according to Inspector Kaufman.  The dog alerted to the seized package.  He repeated these steps for the second October 27, 2011, package seized, placing that package and several control packages in a random order for the canine officer and dog to inspect.  The dog again alerted to the seized package.

With that information, Inspector Kaufman obtained federal search warrants to search both of the packages seized October 27, 2011.  Prior to obtaining federal search warrants, according to Inspector Kaufman, no one from the U.S. Postal Inspectors or law enforcement opened the packages seized October 27, 2011.  After obtaining the federal search warrants, the packages were opened.  They contained a white powdery substance, which was field tested for cocaine. The field test yielded a positive test for cocaine.  Inspector Kaufman explained that there are different field tests for different substances.  Because these substances were white and powdery, the cocaine field test was administered.  The substances were then sent to the Arkansas State Crime Lab for further testing.  Later, sometime after October 31, 2011, the Arkansas State Crime

Lab results confirmed the substance was Methylenedioxypyrovalerone ("MDPV"), not cocaine. On cross examination, Inspector Kaufman admitted he was uncertain how the field test for cocaine could be positive when the substance was MDPV, not cocaine.

On October 31, 2011, Inspector Kaufman intercepted another package from Johnny Thomas with a Las Vega, Nevada, address, mailed from a zip code different from the return address zip code, sent to Mr. Hoyt, with a handwritten label, with shipping charges paid for in cash. No business account was associated with the package. Inspector Kaufman seized the October 31, 2011, package based on his training and experience and because he believed the package fit several indicators of the profile. He searched the law enforcement database to confirm that Mr. Thomas's name had not been associated with the return address since searching the database on October 27, 2011. He requested a canine officer and trained dog inspect the October 31, 2011, package. The dog alerted on the package seized October 31, 2011. Inspector Kaufman obtained a federal search warrant for the October 31, 2011, package. After obtaining the federal search warrant, the package seized October 31, 2011, was opened, the white powdery substance inside was field tested for cocaine, and the field test yielded a positive result for cocaine. Later, Arkansas State Crime Lab tests confirmed the substance was MDPV, not cocaine.

When asked on cross examination, Inspector Kaufman testified that he was unaware if Nevada is considered a drug source state. He knew California and Texas are considered source states but was uncertain about Nevada. He explained that synthetic drugs like MDPV come from all over, not necessarily border states.

He also testified he considered packages sent through on-line transactions like Ebay sales to be business packages.  He acknowledged those packages may be sent from a home address, not a business address.  He testified that some packages use an Ebay label printed from the computer but conceded that not all packages used for Ebay sales have such a label.

He was not aware that law enforcement was investigating Mr. Hoyt prior to seizing the October 27, 2011, packages.  At some point after seizing the October 27, 2011, packages, he ran Mr. Hoyt's name through a law enforcement database and became aware of a criminal history. He could not recall at the time of his testimony what that criminal history included or whether any drug or drug trafficking charges or offenses were included.

He acknowledged the U.S. Postal Inspectors could get a warrant to search Mr. Hoyt's house and could have conducted a controlled delivery of the October 27, 2011, packages but did not.

Inspector Kaufman testified that the MDPV substance was added to the Drug Enforcement Agency's list of scheduled substances sometime in October 2011, before he seized the October 27, 2011, packages.  On October 21, 2011, the Drug Enforcement Agency issued a temporary one-year ban on MDPV, classifying it as a Schedule I substance.

He did not know if the address in Las Vega, Nevada, listed as the return address on the October 27, 2011, packages was a known address to law enforcement in Nevada.  At some point, he called a U.S. Postal Inspector in Nevada, but that inspector was not aware of any issue or investigation, based on Inspector Kaufman's testimony.

## II.        Legal Analysis

Mr. Hoyt challenges the government's seizure of the two packages on October 27, 2011, contending that the seizure violated the Fourth Amendment to the U.S. Constitution and that the evidence obtained from the seizure should be suppressed.   U.S. CONST. amend. IV. The government disagrees.   Mr. Hoyt also claims that, if the seizure of the October 27, 2011, packages violated the Fourth Amendment, the evidence from the seizure of the October 31, 2011, package is fruit of the poisonous tree and also should be suppressed.   The government does not concede that the evidence from the seizure of the October 31, 2011, package is fruit of the poisonous tree, even if the Court determines the seizure of the October 27, 2011, packages violated the Fourth Amendment.   The government contends Inspector Kaufman had a sufficient reasonable suspicion to seize the October 27, 2011, packages and had a separate sufficient reasonable suspicion to seize the October 31, 2011, package so as to satisfy the requirements of the Fourth Amendment.

The Fourth Amendment's protection against unreasonable searches and seizures extends to packages placed in the mail.   *United States v. Johnson*, 171 F.3d 601, 603 (8th Cir. 1999). Individuals have a right to be free from unreasonable searches and seizures of items they place in the mail.   *See, e.g., United States v. Van Leeuwen*, 397 U.S. 249, 251 (1970).   A law enforcement officer may seize a package in the mail for investigative purposes only if he has reasonable suspicion that the package contains contraband.   *United States v. Smith*, 383 F.3d 700, 704 (8th Cir. 2004).

A package is seized for Fourth Amendment purposes when it is detained and subjected to a canine sniff. *United States v. Logan*, 362 F.3d 530, 533 (8th Cir. 2004); *United States v. Walke*r, 324 F.3d 1032, 1036 (8th Cir. 2003).

Reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). In evaluating whether suspicion is reasonable, "we must consider the totality of the circumstances – the whole picture." *Id*. at 8 (internal quotation omitted). The inquiry is not "readily, or even usefully, reduced to a neat set of legal rules." *Id*. at 7 (internal quotation omitted). "Reasonable suspicion exists when, based on the totality of the circumstances, an officer possesses a particularized and objective basis for suspecting that the package contains contraband, that is, more than an inchoate and unparticularized suspicion or hunch." *Logan*, 362 F.3d at 533 (quoting *Johnson*, 171 F.3d at 603). "Conduct typical of a broad category of innocent people provides a weak basis for suspicion." *United States v. Weave*r, 966 F.2d 391, 394 (8th Cir. 1992) (citation omitted), *cert. denied*, 506 U.S. 1040 (1992).

Even when each factor cited by law enforcement to support a seizure is "not by itself proof of any illegal conduct and is quite consistent with innocent" activity, the sum of the factors taken together can amount to reasonable suspicion. *Sokolow*, 490 U.S. at 9. *See also U.S. v. Huerta*, 655 F.3d 806, 809 (8th Cir. 2011). That factors cited by an investigator are included in a "profile" developed by law enforcement does not "detract from their evidentiary significance as seen by a trained agent." *Sokolow*, 490 U.S. at 10. That any one factor viewed in isolation from the others, is "by itself readily susceptible to an innocent explanation" does not justify giving that factor no weight in the analysis. *United States v. Arvizu*, 534 U.S. 266, 274 (2002). This sort of

"divide-and-conquer analysis" has been expressly rejected by the Supreme Court.  *Id*.  A law enforcement officer is "entitled to make an assessment of the situation in light of his specialized training" and experience.  *Id*. at 276.  The Fourth Amendment, however, requires police "to explain *why* the officer's knowledge of particular criminal practices gives special significance to the apparently innocent facts observed."  *Johnson*, 171 F.3d at 604 (citing *United States v. Cortez*, 449 U.S. 411, 418-22 (1981)) (emphasis in original).

Applying those standards to this case, the Court concludes that Inspector Kaufman had reasonable suspicion to seize the package.

Inspector Kaufman testified that the name of the purported sender on the package was unrelated to the return address and testified about why this fact was significant, based on his training and experience.  *See United States v. Lakoskey*, 462 F.3d 965, 976 (8th Cir. 2006) (return address contained fictitious name for address listed); *United States v. Gomez*, 312 F.3d 920, 922, 924-25 (8th Cir. 2002) (return address not associated with sender's name).

He testified that the two October 27, 2011, packages had handwritten labels, which also was significant based on his training and experience.  *See Lakoskey*, 462 F.3d at 976 (handwritten label); *Logan*, 362 F.3d at 533-34 (same); *United States v. Demoss*, 279 F.3d 632, 635 (8th Cir. 2002) (same).

In addition, he described that different zip codes were used for the return address and the place of mailing for the two October 27, 2011, packages.  This also was a significant factor for him, based on his training and experience.  *Huerta*, 655 F.3d at 810 (different zip codes for return address and place of mailing); *United States v. Dennis*, 115 F.3d 524, 532 (7th Cir. 1997) (same).

Inspector Kaufman also testified about the five prior packages sent by Express Mail from Las Vegas, Nevada, to Mr. Hoyt in Perry, Arkansas, within the two months prior to his seizing the October 27, 2011, packages.  He described the factors that made the five prior packages suspect, based on his training and experience.  *See United States v. Alexander*, 540 F.3d 494 (6th Cir. 2008) (citing *Elgin* with approval); *United States v. Elgin*, 57 Fed. Appx. 659, 660 (6th Cir. 2003) (determining that detention of a package was supported by reasonable suspicion when the package was mailed from a city known to be a common source of illegal drugs, showed a fictitious return address, and when three previous packages with fictitious return addresses had been sent to the same address).

It was reasonable for Inspector Kaufman to give weight to the presence of these factors, in the light of his training and experience in law enforcement, and these factors give rise to the objectively reasonable suspicion needed to justify Inspector Kaufman's seizing the October 27, 2011, packages.  Because this Court finds that the government's seizure of the two October 27, 2011, packages did not violate the Fourth Amendment to the U.S. Constitution, the Court need not analyze Mr. Hoyt's fruit of the poisonous tree argument as it relates to the seizure of the October 31, 2011, package.  Based on the legal standard and the testimony and evidence presented in regard to the October 31, 2011, package, the Court concludes the government's seizure of the October 31, 2011, package did not violate the Fourth Amendment to the U.S. Constitution.

For these reasons, Mr. Hoyt's motion to suppress evidence is denied (Dkt. No. 12).

DATED this 1st day of August, 2013.

Kristine G. Baker
United States District Judge